## Fort Worth & Rio Grande Railway Company v. J. H. Reese et al.

### Decided May 28, 1902.

**Connecting Lines—Contract for Handling Freight.**

A contract by one railway company to handle the cars and freight of another at the point of connection, which provided that such handling should be at the risk of the latter company till ready for delivery to the former, such readiness to be determined by the execution of a waybill by the joint agent for its further transit, did not render the latter company liable over to the former for damages recovered for delay (made necessary by the bad condition of the car in which it arrived) in reloading stock after it was delivered to the former company and unloaded in its pens.

Appeal from the County Court of Brown. Tried below before Hon. R. P. Connor.

*West, Smith & Chapman,* for appellant.

*G. H. Harrison,* for appellees Reese and Vincent.

KEY, Associate Justice.—This case was submitted in this court on the following conclusions of fact:

"1. The plaintiffs made a contract with the Fort Worth & Rio Grande Railway Company in writing, covering the shipment of the carload of horses in this suit from Brownwood to Fort Worth, Texas, destined to Longview, Texas; under the terms of the written contract the Fort Worth & Rio Grande Road agreed to haul the car of horses from Brownwood to Fort Worth, and deliver them to connecting line leading to destination, and specially limited its liability for any damage or injury to its own line.

"2.   That the Fort Worth & Rio Grande Railway did haul said car of horses from Brownwood to Fort Worth, and delivered them to the Texas & Pacific Railroad, which line of road connects with the Fort Worth & Rio Grande Railway, and runs from Fort Worth to Longview, Texas.

"3.   That after delivery of said horses to the Texas & Pacific Railway by the Fort Worth & Rio Grande Railway, one of the plaintiffs, J. H. Reese, being in charge thereof, called upon the local freight agent of the Texas & Pacific Railway in Fort Worth, and requested that the Texas & Pacific Railway forward the car of horses from Fort Worth to destination, Longview, and the agent of the Texas & Pacific agreed to do so.

"4.   That the Fort Worth & Rio Grande Railway Company made delivery to the employes of the Texas & Pacific Company of the carload of horses on its arrival in Fort Worth.

"5.   That during the transportation of the shipment on the line of the Fort Worth & Rio Grande Railway, by the broken and defective condition of the car in which the horses were carried, five head were injured substantially as alleged in plaintiff's first amended original petition, while on the line of the Fort Worth & Rio Grande Railway, and by reason of the condition in which said car arrived in Fort Worth, it was necessary for the horses to be unloaded out of it and reloaded in another car.

"5½.   That the plaintiff Reese, in charge of the stock, after its arrival in Fort Worth, requested the local agent of the Texas & Pacific Railway to have the horses unloaded out of the defective car and reloaded in a good car and forwarded to Longview, Texas.

"6.   That the Texas & Pacific Railway Company took charge of the car of horses in Fort Worth, and switched it to the Texas & Pacific stockyards, and unloaded the horses therefrom.

"7.   That after the local agent, or some employe of the Texas & Pacific Road had unloaded said horses, said Texas & Pacific Railway refused to reload and forward the horses immediately, unless plaintiff in charge thereof would leave out two or more head of the horses, claiming that the car was overloaded, which demand by the employes of the Texas & Pacific Railway the plaintiff in charge thereof, J. H. Reese, declined to comply with, and demanded that all the stock be reloaded in the same size car in which they arrived, and forwarded to destination, Longview. That the employes of the Texas & Pacific Company refused to ship said horses for a period of twenty-four hours after they were unloaded in its pens at Fort Worth, and until ordered by the officers of the Texas & Pacific General Office in Dallas to forward said stock in one car.

"8.   That the car in which said horses arrived at Fort Worth and the car in which they left Fort Worth were sufficiently large to properly accommodate the stock, and that the stock were not overloaded in either car.

"9.   That after said car of horses arrived in Fort Worth and was de-

livered by the Fort Worth & Rio Grande road to the Texas & Pacific Railway Company, the employes of the Texas & Pacific Railway Company never communicated with the Fort Worth & Rio Grande Railway Company about what should be done with said horses, or whether they should be reloaded in one car, or when they should be reloaded, or when forwarded, but that the said Texas & Pacific Railway Company's employes in Fort Worth took up the question of whether the horses should be reloaded in the same size car, with the general office of the Texas & Pacific Railway in Dallas.

"11. That so far as the facts disclosed, the only reason why the plaintiff's horses were held in the Texas & Pacific stock yard at Fort Worth, after the time required to unload them out of the broken car and reload them in a good car, was caused by the demand of the Texas & Pacific Railway Company on the plaintiff, that he dispose of or leave out two or more of his horses, under the claim that there were too many head to be loaded in one car, and his refusal to comply with said demand.

"12. That after the horses were reloaded by the Texas & Pacific Railway in Fort Worth and started to Longview, they reached there in a reasonable time, and without accident of any kind or character occurring.

"13. That at the time of the shipment in question, the Texas & Pacific Railway and the Fort Worth & Rio Grande Railway were obligated to each other under the following written contract:

" 'This contract and agreement made and entered into this the 1st day of May, 1900, between the Texas & Pacific Railway Company, a railway corporation, hereinafter called the "Texas Company," and the Fort Worth & Rio Grande Railway Company, a railway corporation, hereinafter styled the "Rio Grande Company," witnesseth:

" 'That for and in consideration of the covenants, conditions, and payments hereinafter mentioned, to be made, kept, and performed by the Rio Grade Company, the Texas Company agrees to furnish the said Rio Grande Company certain facilities in the city of Fort Worth, to wit: For and in consideration of the sum of one hundred dollars ($100) per month, payable on the first day of each and every month in advance, the Texas Company agrees to furnish the depot facilities necessary for doing the freight business of the Rio Grande Company in Fort Worth, Texas, and for and in consideration of the additional sum of three hundred dollars ($300) per month, payable on the first day of each and every month in advance, the Texas Company agrees to do all the switching and furnish all the labor necessary for handling the freight business of the Rio Grande Company in the city of Fort Worth, Texas.

" 'It is further expressly agreed and understood that the Rio Grande Company shall be solely responsible for any and all loss, damage or injury to its own separate property while being handled by the Texas Company, and shall be solely and alone responsible for any and all loss, damage, or injury that may happen to any freight, traffic, or employe

growing out of the handling of its business by the Texas Company under this contract, including its own telegraph business, loss or damage to freight or other property at said station or in cars, and the said loss or damage shall be borne and paid by the said Rio Grande Company individually, as though the business was being handled by their own separate employes, the employes of the Texas Company being treated as the employes of the Rio Grande Company while handling the business of said company.

" 'It is further agreed that any damage or loss that may occur through the negligence of the joint agent at Fort Worth station shall be adjusted with the agent direct by the company interested, it being further agreed that the agent shall be responsible under his separate bond for the care and accounting of the separate property of each company, and any default or loss of money, or other property, that may occur on the part of said agent, shall be a matter of adjustment with said agent by the company interested.

" 'It is further expressly agreed and understood that the Rio Grande Company shall be solely and alone responsible for any and all personal injuries that may result or grow out of the handling of its business, under the terms of this contract, and shall be solely and alone responsible for any loss or damage that may occur to any of its freight or other property, while in the possession of the Texas Company, under this contract.

" 'Car and contents handled under this agreement.—In order to define the responsibility of each party hereto, separately, for cars and their contents handled under this agreement and to fix the time when the car and contents shall be considered as in the possession of the Texas Company, and not being handled under this agreement, it is agreed that the station agent at Fort Worth, Texas, shall, with due diligence and without prejudice, ascertain when each party and every loaded car of either party hereto is ready to be switched into the trains of the other party, to be forwarded from Fort Worth, and as soon as any car and its contents are ready for such delivery, such joint agent shall place, or cause to be placed, in the proper designated place, to be fixed by the Texas Company, without delay, a regular waybill or train waybill for such car and its contents, and the actual placing of the regular waybill or train waybill in the designated place, as above provided, shall constitute the actual delivery from either party to the other hereto, and all losses and damages that may occur to any car or its contents, or to either of them, shall be settled and paid for by the party hereto in whose possession said car and its contents may be, as determined by the above rule relative to the delivery of cars, and delivery of all freights in less than carload lots shall be considered as made between the parties hereto when said freight shall have been unloaded from the car in which it was received at Fort Worth station.

" 'It is further expressly agreed and understood that the Rio Grande Company shall take care of and be responsible for the condition of its

own rolling stock that may be handled under and by virtue of the terms of this agreement.

" 'This agreement shall take effect on the day and date first above written, but it is expressly understood and agreed that either party may terminate same by giving written notice to the other party of its intention so to do, for sixty days prior to the date it desires said contract to terminate.

" 'In witness whereof, the parties hereto have hereunto set their names and affixed their seals on the day and date first above written.

" 'The Texas & Pacific Railway Company,
" 'By [signed] L. S. Thorne, Third Vice Pres't & Gen'l Manager.
" 'Fort Worth & Rio Grande Railway Company,
" 'By [signed] H. C. Wicker, President.'

"14. That the injury done plaintiff's horses by reason of the negligence of the Fort Worth & Rio Grande Road from the time they were. loaded in Brownwood until they were unloaded in the Texas & Pacific stock pens at Fort Worth, amounted to one hundred and twenty-five dollars ($125).

"15. That the injury or damage done to the plaintiffs' horses while in the Texas & Pacific stock pens, and after the time they should have been reloaded and forwarded until they were reloaded and forwarded,. amounted to one hundred and twenty-five dollars."

The trial court rendered judgment for the plaintiffs against each defendant separately for $125, and judgment over in favor of the Texas & Pacific Railway Company against the Fort Worth & Rio Grande Railway Company for $125. The latter judgment is the only subject of complaint in this court, and we sustain the first assignment which charges that the court erred in holding that the Texas & Pacific Railway Company, under the terms of the contract, was entitled to judgment over against the other company for the amount of the former company's liability to the plaintiff.

Under the facts found, we are of the opinion that the damages for which the Texas & Pacific Railway Company was held liable were caused by the default and negligence of that company, after the property shipped had come into its exclusive possession, and ceased to be the property or business of the Fort Worth & Rio Grande Railway Company; and that such being the case, the latter company, under the terms of the contract, is not liable to the Texas & Pacific Railway Company.

The judgment in favor of the plaintiff against both railway companies will be affirmed; but the judgment in favor of the Texas & Pacific Railway Company against the Fort Worth & Rio Grande Railway Company will be set aside, and judgment here rendered in favor of the latter company on the issues involved between the two companies.

*Affirmed in part and reversed and rendered in part.*